|   |   |   |
|---|---|---|
| 1 | | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | | |
| 8 | UNITED STATES DISTRICT COURT | |
| 9 | WESTERN DISTRICT OF WASHINGTON AT SEATTLE | |
| 10 | ERIC EPSTEIN, | CASE NO. C22-684 MJP |
| 11 | Plaintiff, | ORDER GRANTING MOTION TO DISMISS |
| 12 | v. | |
| 13 | USAA GENERAL INDEMNITY COMPANY and UNITED SERVICES AUTOMOBILE ASSOCIATION, | |
| 14 | | |
| 15 | | |
| 16 | Defendants. | |

This matter comes before the Court on Defendants' Motion to Dismiss and/or Strike Portions of Class Action Complaint (Dkt. No. 28) and Request for Judicial Notice (RJN) (Dkt. No. 30). Having reviewed the Motion, the RJN, Plaintiff's Opposition to the Motion (Dkt. No. 33), the Reply (Dkt. No. 35), and all supporting materials, the Court GRANTS the Motion and RJN.

**BACKGROUND**

Plaintiff Eric Epstein has filed suit individually and on behalf of a proposed class against his former auto insurer, Defendants USAA General Indemnity Company (GIC) and its parent company, United Services Automobile Association (USAA). Epstein claims that Defendants have violated the Washington Law Against Discrimination (WLAD) and the Washington Consumer Protection Act (CPA) by forcing lower-ranking servicemembers to pay more for auto insurance than higher-ranking servicemembers. Defendants move to dismiss all of the claims and to strike the request for equitable relief. Defendants have also filed an unopposed Request for Judicial Notice (RJN) that asks the Court to take judicial notice of a "U.S. Military Rank Insignia" page from the Department of Defense's website. (RJN (Dkt. No. 30).) The Court takes judicial notice of the page, though it does not affect the outcome of the Motion.

USAA offers auto insurance to current and former servicemembers of the United States military. (Compl. ¶¶ 7, 29.) USAA "writes auto insurance through four different insurers that operate under common management and control" which Epstein calls the "USAA Group." (Id. ¶ 7.) Two of the related insurers relevant to this action are: (1) USAA, and (2) GIC. (Id.) USAA insures "commissioned officers as well as senior non-commissioned officers in pay grades E-7 or higher along with veterans whose highest pay grade was E-7 or higher." (Id. ¶ 8.) And "GIC insures enlisted personnel in pay grades E-6 or below along with veterans whose highest pay grade was E-6 or below." (Id.) The Complaint refers to enlisted personnel at pay grades E-7 or higher as "Officers Policyholders" and those in pay grades E-1 through E-6 as "Enlisted Policyholders." (Id. ¶ 1.)

As a former enlisted member of the Navy at a pay grade of E-1, Epstein qualified to obtain auto insurance from USAA Group. (Compl. ¶¶ 5, 7.) In August 2020, Epstein requested a

quote for auto insurance from USAA Group. (Id. ¶¶ 30-31.) After applying, he then received a form letter explaining that he could obtain auto insurance from USAA Group. (Id. ¶ 30.) But he alleges that the letter did not tell him that "his status as enlisted would be used as a factor in determining his insurance rate or that he would be assigned to GIC, rather than to USAA, as a result of his military status." (Id.) As used in the Complaint, "military status" refers to Epstein's pay grade of E-1. Epstein then obtained insurance through GIC from August 2020 to April 2022. (Id. ¶ 31.) Epstein alleges that he would have paid roughly 20% less in premiums had he been insured through USAA and not GIC. (Id. ¶ 32.)

Epstein pursues three claims: (1) violations of the WLAD on the basis of his "military status"; (2) violations of the CPA for engaging in "unfair" discrimination by charging higher premiums based on pay grade; and (3) violations of the CPA by failing to disclose to lower pay-grade servicemembers that they will be insured by GIC and that they will pay higher premiums than higher pay-grade servicemembers. (Compl. ¶¶ 49-84.)

Because the relief Epstein seeks is relevant to the analysis under the "filed rate doctrine," the Court reviews it in some detail. Epstein seeks:

(1) declaratory relief (Prayer for Relief ¶ C);

(2) injunctive relief "including but not limited to an order (i) requiring Defendants to use base rates and relativities that generate premiums that do not discriminate against Enlisted Policyholders and/or (ii) otherwise preventing Defendants from continuing to charge discriminatorily high premium rates to Enlisted Policyholders" (Prayer for Relief ¶ D);

(3) "disgorgement, restitution, or imposition of a constructive trust upon the ill-gotten gains derived by Defendants" (Prayer for Relief ¶ E);

(4) "damages, which are at least equal to the amounts that they paid in excess of the amounts that Defendants charged to similarly situated Officer Policyholders" (Prayer for Relief ¶ F);

(5) treble damages under the CPA; (Prayer for Relief ¶ G); and

ORDER GRANTING MOTION TO DISMISS - 3

>        (6) attorneys' fees and costs, pre-and post-judgment interest, and any other further relief the Court deems just (Prayer for Relief ¶¶ H-J).

(Compl. Prayer for Relief ¶¶ C-J.)

# ANALYSIS

## A.  Legal Standard

Under Fed. R. Civ. P. 12(b)(6), the Court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the non-moving party and accept all well-pleaded allegations of material fact as true. Livid Holdings Ltd. v. Salomon Smith Barney, Inc., 416 F.3d 940, 946 (9th Cir. 2005); Wyler Summit P'ship v. Turner Broad. Sys., 135 F.3d 658, 661 (9th Cir. 1998). Dismissal is appropriate only where a complaint fails to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## B.  The Filed Rate Doctrine Bars Plaintiff's Claims

Defendants move to dismiss all three of Epstein's claims on the theory that they are barred by the filed rate doctrine. The Court first reviews the doctrine and then provides its analysis as to why it bars all of the claims Epstein pursues.

### 1.  Legal Standard

Under Washington common law, the "filed rate doctrine" limits "consumers' power to challenge rates the Office of Insurance Commissions (OIC) has approved." McCarthy Fin., Inc. v. Premera, 182 Wn.2d 936, 942 (2015). The "doctrine provides, in essence, that any 'filed

rate'—a rate filed with and approved by the governing regulatory agency—is per se reasonable and cannot be the subject of legal action against the private entity that filed it." Id. (citation and quotation omitted). So claims that directly challenge the reasonableness of a rate approved by the OIC are nonjusticiable and barred under the doctrine. See id. Ultimately, this serves two purposes: "(1) to preserve the agency's primary jurisdiction to determine the reasonableness of rates, and (2) to insure that regulated entities charge only those rates approved by the agency." Id. (citation and quotation omitted).

But the filed rate doctrine is not without its limits. Its application depends on whether the claims and requested damages "directly attack agency-approved rates" or are "merely incidental to agency-approved rates." McCarthy, 182 Wn.2d at 943. The doctrine applies "only if the claims and damages directly attacked agency rates and 'would necessarily require courts to reevaluate agency-approved rates.'" Alpert v. Nationstar Mortg., LLC, 198 Wn.2d 228, 235 (2021) (quoting McCarthy, 182 Wn.2d at 942-43). And the doctrine will not apply when the agency-approved rates are "'merely incidental' to the claims" and damages or where "general damages" are sought. Id. (quoting McCarthy, 182 Wn.2d at 942).

The Washington Supreme Court has only once applied this distinction between "direct" and "incidental" claims to determine whether the filed rate doctrine barred the claims at issue. See McCarthy, 182 Wn.2d at 942-43; see also Alpert, 198 Wn.2d at 235 (noting that McCarthy is the only Washington Supreme Court case to apply the doctrine). In McCarthy, the plaintiffs argued that the defendants had overcharged them and violated the CPA by misrepresenting how health insurance premiums were negotiated and the rates would increase. McCarthy, 182 Wn.2d at 940. They sought damages in the form of: (1) the "sum of the excess premiums paid to the defendants," and (2) a refund of any surplus the court found to be "excessive and unreasonable."

Id. at 940. The Court held the damages requested directly attacked the approved rates because they required the Court to "determine what health insurance premiums would have been reasonable for the Policyholders to pay as a baseline for calculating the amount of damages. . . ." Id. at 943. As such, the filed rate doctrine barred the claims. Id.

Two cases from this District highlight scenarios in which the filed rate doctrine has been found to bar CPA claims. In Benanav v. Healthy Pays Pet Ins., LLC, the court found the filed rate doctrine barred CPA claims premised on allegations that defendant misrepresented how it would calculate premium increases. 95 F. Supp. 3d 987, 999 (W.D. Wash. 2020) (Martinez, J.). The court noted that "Plaintiffs concede that their damages 'may be the increased premiums they paid in violation of Healthy Paws' promises,'" and that this placed "the Court in the position of calculating the reasonable rate Plaintiffs expected to pay." Id. at 999 (internal citation omitted). The court explained that even if this calculation was "formulaic and straightforward" it ran afoul of the doctrine because it would require the court to determine what the reasonable rate should be. Id. at 999-1000. Similarly in Hong v. Bank of Am., NA, the court found that the filed rate doctrine barred CPA, breach of contract, breach of fiduciary duty, negligent supervision, and civil conspiracy claims where the plaintiff alleged she overpaid for insurance due to an illegal kickback scheme. No. C20-1667 RSM, 2021 WL 3207684, at *4 (W.D. Wash. July 29, 2021) (Martinez, J.), aff'd sub nom. Hong v. Bank of Am., NA, No. 21-35742, 2022 WL 2235469 (9th Cir. June 22, 2022). The court concluded that "[t]o determine the allegedly unlawful portion of Plaintiff's LPI premiums the Court would be required to re-examine the reasonableness of insurance rates that the Washington Office of Insurance Commissioner already approved as not 'excessive, inadequate, or unfairly discriminatory.'" Id. at *4 (quoting RCW 48.19.020). The court rejected the plaintiff's argument that she was not attacking the reasonableness of the rate,

noting that the plaintiff alleged that the premiums were "inflated far above the reasonable cost of providing LPI coverage." Id.

The parties cite to only one case where a court found CPA and breach of contract claims not barred by the filed rate doctrine. See Harvey v. Centene Mgmt. Co. LLC, 357 F. Supp. 3d 1073, 1083 (E.D. Wash. 2018). In Harvey, the plaintiff did "not allege the premiums were too high but instead allege[d that] Defendants misrepresented and made material omissions regarding the coverage actually provided by their [insurance] policy, which did not deliver the insurance services for which the Insurance Commissioner approved the premium." Id. at 1084. The court concluded that "[a]warding the damages [the plaintiff] seeks would not require the Court to determine what premiums would have been reasonable." Id. The court found that the case diverged from McCarthy and aligned with a scenario where the plaintiffs were content with the approved rate, but filed suit to force the insurer to "'live[] up to its contractual and legal obligations under that rate schedule.'" Id. (quoting Kaleigh Powell, "A Nuanced Approach": How Washington Courts Should Apply the Filed Rate Doctrine, 92 Wash. L. Rev. 481, 513–14 (2017)).

    **2.**    **The Filed Rate Doctrine Bars the Claims**

Epstein's claims run headlong into the filed rate doctrine and must be dismissed. Though Epstein argues his Complaint contains not "a single allegation of unreasonable rates," its substance betrays this assertion. Epstein's WLAD and CPA claims directly challenge USAA Group's decision to charge different rates to "similarly situated" servicemembers depending on their pay grade. (See Compl. ¶¶ 14-28, 32, 52-53, 60, 65-66, 78.) In essence, these claims assert that the higher OIC-approved rate for "Enlisted Policyholders" is unlawful when compared to the lower OIC-approved rate for "Officer Policyholders." This presents a scenario similar to

1 McCarthy, Benanav, and Hong, where the claims boil down to an assertion that the premiums are
2 overinflated and unreasonable. McCarthy, 182 Wn.2d at 942-43; Benanav, 95 F. Supp. 3d at 999;
3 Hong, 2021 WL 3207684, at *4. And contrary to the allegations in Harvey, Epstein is not asking
4 the Court to find that USAA Group should live up to a contractual or legal obligation under the
5 rate schedule. See Harvey, 357 F. Supp. 3d at 1083. Instead, he asks the Court to declare the rate
6 for Enlisted Policyholders to be illegal and therefore unreasonable. This violates the filed rate
7 doctrine.

8       An analysis of the damages requested confirms that this action improperly requires the
9 Court to determine the reasonableness of the OIC-approved rates. Epstein seeks "damages,
10 which are at least equal to the amounts that they paid in excess of the amounts that Defendants
11 charged to similarly situated Officer Policyholders." (Compl. Prayer for Relief ¶ F). In other
12 words, Epstein seeks to have the Court or fact finder to determine that the proper rate for
13 Enlisted Policyholders to pay is the same rate that Officer Policyholders pay. That determination
14 falls squarely in the province of the OIC. And while Epstein suggests that this requires
15 comparing "approved rates," it still requires the Court or factfinder to make some determination
16 as to whether the USAA rate for Officer Policyholders is the appropriate rate for Enlisted
17 Policyholders. (Opp. at 5 (Dkt. No. 33 at 13)); see Benanav, 95 F. Supp. 3d at 999. It would be
18 overly simplistic to conclude that adopting another approved rate is reasonable simply because
19 the insureds are "similarly situated." And because the OIC undertakes a separate analysis as to
20 each rate, Epstein's proposal would substitute a judicial determination for the OIC's in
21 contravention of the doctrine. Additionally, the injunctive relief Epstein seeks would force the
22 Court to conclude that the OIC-approved Officer Policyholder rate is the reasonable and
23 appropriate rate to apply to Enlisted Policyholders. (See Compl. Prayer for Relief ¶ D.) That is
24

because Epstein seeks an injunction ordering (i) "Defendants to use base rates and relativities that generate premiums that do not discriminate against Enlisted Policyholders and/or (ii) otherwise preventing Defendants from continuing to charge discriminatorily high premium rates to Enlisted Policyholders." (Id.) To craft any such injunction, the Court would necessarily have to determine that the current rate is unreasonable and that some other rate is not. In sum, because the requested relief directly attacks the reasonableness of the OIC-approved rates, the filed rate doctrine necessarily applies and prevents the action from proceeding.

Epstein suggests that allowing the claims to proceed would not run afoul of the filed rate doctrine because the OIC does not enforce the CPA or WLAD. This is an interesting, but unwinnable argument. First, the Supreme Court has already held that CPA claims can be barred by the doctrine even though the CPA is to be liberally construed and applied. See McCarthy, 182 Wn.2d at 942. That undermines any contrary argument to save Epstein's CPA claims. Second, Epstein has not identified any reasoned basis why the WLAD presents an exception to the filed rate doctrine. Epstein invokes a 1974 Opinion Letter from the Washington Attorney General explaining that the OIC does not have to affirmatively consider the WLAD when approving insurance policy forms. (Opp. at 5-6 (citing Wash. Atty. Gen. Letter Op. 1974 No. 100, *2-*3 (1974)).) The letter suggests that the OIC could not disapprove a policy form for a "possible violation by an insurer of any of the civil rights of a policyholder . . . which are set forth in 49.60.3030." Letter Op. 1974 at *2-*3. This letter is not dispositive of the issue presented in this case, however, particularly since it addressed the laws as to policy form approval, and not insurance rates. And, as the Ninth Circuit has pointed out, in approving an insurer's rates, the OIC must determine "that, among other things, the rates were not 'excessive, inadequate, or unfairly discriminatory.'" Hong, No. 21-35742, 2022 WL 2235469, at *1 (9th Cir. June 22,

2022) (quoting RCW 48.19.020, 48.19.040). So there are mechanisms for the OIC to enforce the WLAD if violations are identified. And Plaintiff has an administrative remedy before the Insurance Commissioner to challenge a rate as violating the WLAD. See RCW 48.19.310. The Court is not convinced by the AG's letter or any additional arguments Epstein advances that there exists a carve-out to the filed rate doctrine for WLAD claims.

Epstein also fails to cite any cases that have permitted WLAD claims to proceed that would otherwise be barred by the filed rate doctrine. Epstein identifies a case from the Northern District of California where the court determined that California's unique version of the filed rate doctrine did not apply to the discrimination claims advanced as to USAA's same practices challenged in this lawsuit. Coleman v. United Servs. Auto. Ass'n, No. 21-CV-217-CAB-LL, 2021 WL 2577158, at *4 (S.D. Cal. June 22, 2021), motion to certify appeal denied, No. 21-CV-217-CAB-LL, 2021 WL 4034159 (S.D. Cal. Sept. 2, 2021). But because the court in Coleman considered California law (which has a unique statutory filed rate doctrine and different antidiscrimination laws), it provides little basis to support Epstein's claims which turn exclusively on Washington law. The Court therefore declines to rely on Coleman to create an exception to the filed rate doctrine for WLAD claims.

Epstein also advances an unconvincing argument that the "historical context and purpose of the filed rate doctrine counsel against applying it to bar this lawsuit." (Opp. at 8.) This argument primarily invokes federal case law, which is inapposite to determining Washington's particular application of the common law doctrine. And the Court sees no indication from the Washington Supreme Court that WLAD claims are exempt from the filed rate doctrine when these claims directly target OIC-approved insurance rates. This conclusion does leave open, however, WLAD claims that do not directly attack the reasonableness of OIC-approved rates.

The Court lastly rejects Epstein's argument that the Court should not decide whether the filed rate doctrine applies to this action until the theory of damages is fully resolved. While this was one of the reasons the court in Harvey suggested why the filed rate doctrine should not apply to dismiss the complaint, it was only a secondary reason. Harvey, 357 F. Supp. 3d at 1084. And the court reached that conclusion on a distinct record where the damages sought were perhaps less clearly formulated than they are in this case and where they did not implicate the reasonableness of the OIC-approved rates. Id. Here, Epstein has quite clearly identified the measure of damages as the difference between the Enlisted Policyholder and Officer Policyholder rates, and that calculation directly requires the Court to determine that the Officer Policyholder rate is the reasonable rate to charge and that the Enlisted Policyholder rate is unreasonable. The Court is therefore unconvinced that it should hold off on its determination that the filed rate doctrine bars the claims in this case.

**CONCLUSION**

Having considered the Complaint and the relief it seeks, the Court finds that Epstein's CPA and WLAD claims directly attack the reasonableness of OIC-approved rates and are barred by the filed rate doctrine. The Court therefore GRANTS the Motion to Dismiss and DISMISSES this action WITH PREJUDICE. The Court does not reach Defendants' alternative arguments in support of dismissal or striking the equitable relief sought, as doing so is unnecessary to resolving the Motion to Dismiss.

The clerk is ordered to provide copies of this order to all counsel.

Dated October 19, 2022.

Marsha J. Pechman
United States Senior District Judge

ORDER GRANTING MOTION TO DISMISS - 11